UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MILDRED TAPIA,

                              Plaintiff,                    No. 17-CV-431 (KMK)

         -v-                                               <u>OPINION & ORDER</u>

TWC ADMINISTRATION LLC,

                              Defendant.

<u>Appearances:</u>

Russell A. Schindler, Esq.
Kingston, NY
*Counsel for Plaintiff*

Michael David Kabat, Esq.
Abigail Stecker Romero, Esq.
Joseph Scott Carr, Esq.
Kabat Chapman & Ozmer LLP
Atlanta, GA
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

        Plaintiff Mildred Tapia ("Plaintiff") brings this Action against her employer, TWC

Administration LLC ("Defendant" or "TWC"), alleging that Defendant failed to promote her

because of her Hispanic race and Puerto Rican national origin and subjected her to a hostile work

environment, both in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et.*

*seq.* (Compl. (Dkt. No. 1).)[1] Before the Court is Defendant's Motion for Summary Judgment.

(Notice of Mot. for Summ. J. (Dkt. No. 48).) For the following reasons, the Motion is granted.

---

[1] Plaintiff is a current employee of TWC's successor, Charter Communications. (Phillips
Decl. ¶¶ 1, 8.) For ease of reference, Defendant is only referred to as TWC.

## I. Background

### A. Factual Background

The following facts are taken from Defendant's statement pursuant to Local Civil Rule 56.1, (Def.'s Rule 56.1 Statement ("Def.'s 56.1") (Dkt. No. 52)), Plaintiff's response to Defendant's 56.1 statement, (Pl.'s Resp. to Def.'s 56.1 Statement ("Pl.'s 56.1") (Dkt. No. 57)), Defendant's reply to Plaintiff's 56.1 (Def.'s Reply to Pl.'s Resp. to Def.'s 56.1 Statement ("Def.'s Reply 56.1")), and the exhibits submitted by both Parties, (Decl. of Abigail Stecker Romero, Esq. in Supp. of Mot. for Summ. J. ("Romero Decl.") (Dkt. No. 50); Decl. of Kasie Phillips in Supp. of Mot. for Summ. J. ("Phillips Decl.") (Dkt. No. 51); Decl. of Russell A. Schindler in Opp'n to Mot. for Summ. J. ("Schindler Decl.") (Dkt. No. 53)). The facts are recounted "in the light most favorable to" Plaintiff, the non-movant. *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018) (internal quotation marks omitted). The facts as described below are not in dispute unless indicated otherwise.[2]

---

[2] The Court notes that some of Plaintiff's purported denials in the 56.1 statement are merely semantic disagreements with Defendant's language or recitations of other, often irrelevant facts. (*E.g.*, Pl.'s 56.1 ¶ 19 (quibbling over what "attempting to resolve customer issues" means); *id.* ¶ 20 (quibbling with what "made Plaintiff happy" when both Parties agree it was the office relocation); *id.* ¶ 22 (noting that Plaintiff's reference to a "political process" of choosing candidates for promotion did not relate to "politics as in government" when Defendant never suggested it did); *id.* ¶ 25 (denying Defendant's statement regarding the qualifications listed in the job posting by describing statements made about Plaintiff's interview).) These paragraphs do not actually challenge the factual substance described in the relevant paragraphs in Defendant's 56.1 statement, and thus the Court will not consider them as creating disputes of fact. *See, e.g.*, *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) ("Many of Plaintiff's purported denials—and a number of his admissions—improperly interject arguments and/or immaterial facts in response to facts asserted by Defendants, often speaking past Defendants' asserted facts without specifically controverting those same facts."); *id.* ("[A] number of Plaintiff's purported denials quibble with Defendants' phraseology, but do not address the factual substance asserted by Defendants.").

Moreover, in some of the instances where Plaintiff disputes a fact, the 56.1 statement fails to cite the supporting portions of the record. (*E.g.*, Pl.'s 56.1 ¶¶ 18, 26–28, 60.) The Court may deem such challenged facts undisputed. L. Civ. R. 56.1(d) ("Each statement by the . . .

### 1. Plaintiff's Employment at TWC

Plaintiff was born and raised in Puerto Rico, and speaks both English and Spanish. TWC first hired Plaintiff as a Customer Care Representative in 2009. (Def.'s 56.1 ¶ 5.) In 2011, Sheila Frazier ("Frazier") selected Plaintiff to serve as a Quality Assurance Specialist under Frazier's supervision. (*Id.* ¶ 6.) In this position, Plaintiff monitored calls between TWC's customer care representatives and TWC's customers for quality assurance purposes. (*Id.* ¶ 7.) Plaintiff "[v]ery seldom" had to monitor or review a call where the agent and customer were speaking in Spanish. (Def.'s 56.1 Reply ¶ 8; Romero Decl. Ex. A ("Pl.'s Dep.") 33, 67.) After becoming a Quality Assurance Specialist, Plaintiff received generally satisfactory performance evaluations. (Def.'s 56.1 ¶ 10.) Plaintiff has been on leave from work since approximately May 20, 2016. (*Id.* ¶ 12.)

### 2. Complaints Regarding Plaintiff and Comments About Plaintiff Speaking Spanish

TWC received numerous complaints from its employees about Plaintiff. Plaintiff contends the complaints related to her speaking Spanish while at work. (Pl.'s 56.1 ¶ 15; Pl.'s Dep. 46.). The record shows, however, that the complaints were about Plaintiff regularly taking personal phone calls at her desk in a loud and disruptive manner. (Def.'s 56.1 ¶ 15; Def.'s 56.1 Reply ¶ 15; Phillips Decl. ¶ 12; *id.* Ex. 5, at 2.) Plaintiff conceded in testimony that she "probably" took personal calls at her desk from her mother. (Pl.'s Dep. at 68–69.) And Plaintiff

---

opponent . . . . must be followed by citation to evidence which would be admissible."); *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (explaining that a court is not required to search the record for genuine issues of material fact that the party opposing summary judgment failed to bring to the court's attention in the 56.1 statement); *Baity*, 51 F. Supp. 3d at 418 (collecting cases holding that "responses that do not point to any evidence in the record that may create a genuine issue of material fact do not function as denials, and will be deemed admissions of the stated fact" (alteration and internal quotation marks omitted)).

acknowledges that she has no first-hand knowledge regarding any complaints made to TWC. Rather, Plaintiff asserts that other people in the Quality Assurance department told her that employees from the nearby Help Desk department "ha[d] a problem [with] her speaking Spanish." (Pl.'s Dep. 46; *see also* Def.'s 56.1 ¶ 71 (coworker testified that she never heard any coworkers make statements to Plaintiff regarding her use of Spanish in the workplace).) Plaintiff confronted the Help Desk employees about their comments, and after she left, she overheard one of the employees call her a "Spanish spic." (Pl.'s Dep. 60.) She spoke with Joseph Ploof ("Ploof"), TWC's Director of Customer Operations, about the comment and her ability to speak Spanish at the office, and Ploof asked her to also bring these concerns to Thomas Frost ("Frost"), TWC's Human Resources Generalist. (*Id.* ¶ 60–61.) Ploof and Frost both "advised [Plaintiff] that she was allowed to speak in Spanish at work, to both co-workers and customers." (Def.'s 56.1 ¶ 64.) Around 2016, the same Help Desk employees made statements, within earshot of Plaintiff, such as "[w]e are in America and we speak English here in America," and "I don't know why they don't speak English." (Def.'s 56.1 ¶ 70; Pl.'s 56.1 ¶ 70.) However, Plaintiff did not testify that these statements were made directly to Plaintiff. (Pl.'s Dep. 49–50, 161.)[3] Plaintiff did not find any statements her coworkers allegedly made intimidating, harassing, or threatening and no one ever physically approached Plaintiff, screamed at her, intimidated her, or threatened her physically or otherwise. (Def.'s 56.1 ¶ 73.)

---

[3] In her opposition, Plaintiff notes that "[she] testified that she endured comments about her speaking in Spanish five times per week, or more." (Pl.'s Mem. 1.) However, Plaintiff fails to provide any record citations to support this fact, and the Court therefore disregards her unsupported assertions. *Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 503 n.1 (S.D.N.Y. 2015) (disregarding all assertions in opposition papers that "do not contain citations to the record, or are not supported by the citations in the record").

TWC also received complaints that Plaintiff was unreasonably loud even when not on the phone, such as when Plaintiff would speak with coworkers. (Def.'s 56.1 ¶ 17.) During Plaintiff's deposition, she testified about a time she was talking to a coworker and employees from the Help Desk started saying "Shhhhh." (Pl.'s Dep. 162.) The coworker who complained about Plaintiff also submitted a complaint against a white, male, English-speaking coworker for being loud and disruptive. (Def.'s 56.1 ¶ 18.) Plaintiff asked to be moved, (Pl.'s Dep. 67), and TWC gave Plaintiff a private office, which made her "happy" to be away from the Help Desk employees and eliminated issues with her purportedly loud and disruptive conduct, (Def.'s 56.1 ¶ 20).

### 3. Plaintiff's Application for Promotion

On April 17, 2013, June 3, 2015, August 28, 2015, and December 2, 2015, Plaintiff applied for a position as a Customer Care Supervisor—a promotion from her position as a Quality Assurance Specialist. (Phillips Decl. ¶ 15.) TWC's customer care supervisors were required to "plan, staff and assist in supervising a staff of customer care representatives." (Def.'s 56.1 ¶ 23 (quoting Phillips Decl., Ex. 6, at 1, 3, 5, 7 (applicable job descriptions)).) Customer Care Supervisors also coached those representatives on "attendance, punctuality and overall performance . . . [and] complete[ed] annual performance reviews." (*Id.* ¶ 24 (quoting Phillips Decl., Ex. 6, at 1, 3, 5, 7 (applicable job descriptions)).) TWC additionally required all of its Customer Care Supervisors to have "excellent communication" skills, (*id.* ¶ 25 (quoting Phillips Decl., Ex. 6, at 1, 4, 6, 8 (applicable job descriptions))), and written communication skills were considered particularly important because they were required to prepare "comprehensive documents," (Digilio Dep. 34). According to Defendant, Plaintiff did not possess the skills necessary to perform the duties of a Customer Care Supervisor—namely, she struggled with her

time management skills, productivity, and written communication skills. (Def.'s 56.1 ¶ 26.)[4] Plaintiff contends she was not hired because she is Hispanic and from Puerto Rico, spoke Spanish in the workplace, and spoke English with a heavy accent. (Compl. ¶¶ 22–34.)

Following her first application on April 17, 2013, Plaintiff was interviewed for the position in May 2013 by Mary Digilio, a Customer Care Manager. (Def.'s 56.1 ¶ 32.)[5] However, TWC hired another internal candidate ("S.K."), for the 2013 Customer Care Supervisor position. (Id. ¶ 33.) S.K. "had extensive supervisory and managerial experience[,] was a team player, motivator, very forward thinking, always thought about the big picture and did phenomenal in the interview." (Id. ¶ 34.) Plaintiff disputes S.K.'s qualifications, noting that based on conversations with him, Plaintiff was under the impression he did not have a bachelor's degree and his prior experience involved managing a gas station. (Pl.'s Dep. 116–17.)[6]

Following her June 3, 2015 application, Plaintiff was separately interviewed by Digilio and Ploof on June 11, 2015. (Id. ¶ 17.) While Ploof described Plaintiff's interview as "good," particularly regarding her answers in relation to teamwork and quality scoring, (Pl.'s 56.1 ¶ 40;

---

[4] Plaintiff responds to this statement with the word "denied" and no record citations. (Pl.'s 56.1 ¶ 26.) *See* L. Civ. R. 56.1(d) ("Each statement by the . . . opponent . . . . must be followed by citation to evidence which would be admissible.").

[5] Plaintiff describes Plaintiff's 2013 interview as "good," citing to deposition testimony from Ploof. (Pl.'s 56.1 ¶ 35.) However, Ploof was referring to the 2015 interview, discussed in more detail below. (Romero Decl. Ex. B ("Ploof Dep.") 15 (Dkt. No. 50)).)

[6] In her Opposition, Plaintiff suggests she was qualified for this position because she "worked for Verizon and held a supervisory position there wherein she supervised a staff of 20 customer care agents. The team she supervised at Verizon was the top performing team in the Verizon call center." (Pl.'s Mem. Law in Opp'n to Summ. J. ("Pl.'s Mem.") 1 (Dkt. No 56).) However, Plaintiff fails to provide any record citations to support this fact, and the Court therefore disregards her unsupported assertions. *Berry*, 137 F. Supp. 3d at 503 (disregarding all assertions that "do not contain citations to the record, or are not supported by the citations in the record").

Ploof Dep. 15–16), he also testified that Plaintiff did not have a good answer to the "leadership questions" because she did not have "details on who she coached and developed before in lead teams," (Def.'s Reply 56.1 ¶ 40; Ploof Dep. 7, 15–17). Digilio testified that Plaintiff was "vague on her answers to [Digilio's] questions or did not answer them satisfactorily." (Digilio Dep. 29–30.) In considering Plaintiff for the position, Digilio also asked Frazier for feedback regarding Plaintiff's "readiness for a care supervisor position." (Def.'s 56.1 ¶ 42.) Frazier responded that Plaintiff "certainly has the desire to be a leader and contribute to our collective goals and success," but that she "continues to receive coaching and feedback on the importance of managing her time to avoid impacting productivity," and needed to continue working on her "written communication skills and communication responsiveness." (*Id.* ¶ 43.) Frazier's opinion was consistent with comments she had written in Plaintiff's annual performance reviews beginning in 2011. (Pl.'s Dep. Exs. 8–12 ("Performance Reviews") (Dkt. No. 50).) TWC selected another employee for the June 2015 Customer Care Supervisor position, (Def.'s 56.1 ¶ 44), and notified Plaintiff of the decision on June 18, 2015, (*id.* ¶ 45). TWC did not believe Plaintiff had the skills to effectively supervise others or to resolve the type of difficult customer issues Plaintiff would regularly encounter as a Customer Care Supervisor. (Def.'s 56.1 ¶ 41.)[7]

The successful candidate ("M.F.") was a Hispanic woman who speaks Spanish, (*id.* ¶ 46), and had completed TWC's Supervisor Intern Program, (*id.* ¶ 47).[8] M.F. was also "very forward

---

[7] Plaintiff denies this fact by pointing to Ploof's testimony that Tapia had good answers to questions relating to teamwork and quality scoring. (Pl.'s 56.1 ¶ 41.) However, that does not dispute that TWC believed that Plaintiff did not have the leadership skills necessary for the position after considering all of the other information before it, including Delgado's interview and the feedback from Plaintiff's supervisor.

[8] At the time, employees serving as Quality Assurance Specialists (Plaintiff's position) were not eligible for the Supervisor Intern Program. (Def.'s 56.1 ¶ 48.)

thinking, underst[ood] what drives agent performance, [was] very proactive and [brought] constructive solutions" to problems, (*id.* ¶ 49 (quoting Digilio Dep. 32), and displayed "[g]ood leadership skills, good leadership examples, teamwork examples," and Ploof "had observed [her] teamwork . . . in customer service," (Ploof Dep. 19). The Parties dispute M.F.'s qualifications. (Pl.'s 56.1 ¶ 50.) Plaintiff relies on Digilio's deposition testimony that she "believe[d]" the individual "had experience in the retail industry," (Digilio Dep. 32), to contend M.F. had "no experience as a supervisor in the telecommunications industry." (Pl.'s 56.1 ¶ 50.) Defendant counters that Digilio did not actually testify that M.F. had no supervisory experience in the telecommunications industry, only that she at least had experience in the retail industry. (Def.'s Reply 56.1 ¶ 50.)

After submitting her August 28, 2015 application, Plaintiff was not re-interviewed. (Def.'s 56.1 ¶ 52.) Defendant contends this was because Defendant's supervisors had recently interviewed Plaintiff for the same position a few months earlier in June 2015. (Phillips Decl. ¶ 18.) TWC selected an African American woman ("N.H."). (Def.'s 56.1 ¶ 53.) TWC decided to promote N.H. because she was "able to connect with agents in her communication, very passionate about customer service, [and] very passionate about professionalism." (Def.'s 56.1 ¶ 54 (quoting Digilio Dep. 49).) N.H. was also a part of the Supervisor Intern Program. (Digilio Dep. 49.) Plaintiff believes she had more education and experience than N.H., noting that based on conversations about N.H. in the workplace, Plaintiff was under the impression she had no prior supervisor experience and did not have a bachelor's degree. (Pl.'s 56.1 ¶¶ 54–55 (citing Pl.'s Dep. 94–96).) In her deposition, Digilio could not recall N.H.'s prior supervisory experience. (Digilio Dep. 49.)

After submitting her December 2, 2015 application, Plaintiff was not re-interviewed. (Def.'s 56.1 ¶ 57.)  Defendant contends this was because Defendant had interviewed Plaintiff within the past six months for the same position.  (Phillips Decl. ¶ 19.)  Plaintiff counters in her 56.1 statement that she "was told she did not need to apply anymore."  (Pl.'s 56.1 ¶ 57 (citing Pl.'s Dep. 83–85.)  What this statement means, however, is not entirely clear from the record. Plaintiff's deposition testimony suggests that she was told she was not going to be interviewed, and that Defendant knew about her application and she didn't need to apply again for the December 2015 position.  (Pl.'s Dep. 82–85.)  Defendant selected another employee for this position, who had successfully completed the Supervisor Intern Program.  (Def.'s 56.1 ¶ 58.)[9] There is no additional evidence in the record from either Party regarding the December 2015 hire's qualifications.  (Def.'s 56.1 ¶ 60.)

### 4.  Shadow Program

In her deposition, Plaintiff complained that she was not treated "equally as [her] male coworkers" when Frazier declined Plaintiff's request to allow one of TWC's other employees to temporarily work alongside, or "shadow," Plaintiff in February 2016.  (Def.'s 56.1 ¶ 65.)  Frazier did not deny Plaintiff's request due to "the fact that [Plaintiff] spoke Spanish . . . or the fact that [she] was Hispanic."  (*Id.* ¶ 66.)  Rather, Plaintiff testified that the reason for the denial was "more politics," because Frazier was a "bully" who treated "some [quality assurance] agents different than others" based on "what you have gone through with her."  (*Id.* ¶ 67 (quoting Pl.'s Dep. 182–83).)

---

[9] Defendant contends that "Plaintiff has no evidence that this individual was less qualified than she and does not even know who applied for this position."  (Def.'s 56.1 ¶ 60.) Plaintiff's 56.1 statement responds with "denies," but contains no citation to any record evidence to support the denial.  (Pl.'s 56.1 ¶ 60.)

### 5. Plaintiff's Complaint and Investigation

Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") dated April 20, 2016, alleging that she was passed over for promotions and subject to a hostile work environment due to her race and national origin. (Def.'s 56.1 ¶ 13.) TWC investigated Plaintiff's charge as if it was an open-door complaint pursuant to its policy of encouraging employees to report suspected discrimination or harassment to its Human Resources Department. (*Id.* ¶ 14.) Kasie Phillips, Employee Relations Manager, wrote Plaintif a letter on August 2, 2016 explaining the investigation concluded the complaint was unsubstantiated. (Phillips Decl. Ex. 5 (Dkt. No. 51).)[10] Defendant's counsel for the EEOC proceedings submitted a letter on September 7, 2016 disputing the claims in the EEOC complaint. (Phillips Decl. Ex. 4 (Dkt. No. 51).)

### B. Procedural History

Plaintiff filed the Complaint on January 20, 2017. (Compl.) After receiving two extensions of time, (Dkt. Nos. 7, 9), Defendant filed its Answer on March 13, 2017, (Answer (Dkt. No. 11)). Court mediation was held but unsuccessful. (Dkt. No. 23.) On October 10, 2017, the Court adopted the Parties' joint proposed discovery schedule. (Dkt. No. 27.)

On December 8, 2017, Defendant filed a pre-motion letter indicating the grounds on which it would move for summary judgment. (Letter from J. Scott Carr, Esq. to Court (Dec. 8, 2017) (Dkt. No. 35).) Plaintiff responded, arguing that Defendant's proposed motion lacked

---

[10] Plaintiff seems to suggest that the investigation was incomplete, as "Phillips failed to return Plaintiff's phone calls." (Pl.'s Resp. 56.1 ¶ 14.) Plaintiff's deposition testimony indicates that Plaintiff called Phillips *after* she received a letter outlining the results of Phillip's investigation, and Phillips never called Plaintiff back. (Pl.'s Dep. at 216.) Additionally, Phillip's letter indicates that Phillips "made attempts to contact" Plaintiff to discuss the concerns in more detail during the course of the investigation, but Plaintiff "did not respond." (Pl.'s Dep. Ex. F (Letter from Kassie Phillips to Plaintiff (Aug. 2, 2016) ("Phillips Letter") 123.)

merit. (Letter from Russell A. Schindler, Esq. to Court (Dec. 21, 2017) (Dkt. No. 37).) The

Court then held a conference on January 11, 2018 and adopted a briefing schedule. (*See* Mot.

Scheduling Order (Dkt. No. 38).) Defendant filed the instant Motion for Summary Judgment

and supporting papers on February 16, 2018. (Not. of Mot. For Summ J.; Mem. of Law in Supp.

of Mot. For Summ. J. ("Def.'s Mem.") (Dkt. No. 49); Def.'s 56.1; Romero Decl.; Phillips

Decl.)[11] Plaintiff filed an opposition and accompanying papers on March 16, 2018. (Pl.'s Mem.

Law in Opp'n to Summ. J. ("Pl.'s Mem.") (Dkt. No 56); Pl.'s 56.1; Schindler Decl.) On April 6,

2018, Defendant filed a Reply. (Reply Mem. of Law in Supp. of Mot. for Summ. J. ("Def.'s

Reply") (Dkt. No. 47); Def.'s Reply 56.1.)

## II. Discussion

### A. Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir.

2014) (same). "In determining whether summary judgment is appropriate," a court must

"construe the facts in the light most favorable to the non-moving party and . . . resolve all

ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653

F.3d 156, 164 (2d Cir. 2011) (internal quotation marks omitted); *see also Borough of Upper*

*Saddle River v. Rockland Cty. Sewer Dist. No. 1*, 16 F. Supp. 3d 294, 314 (S.D.N.Y. 2014)

(same). "It is the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy*

---

[11] The Parties' papers were erroneously filed on ECF and counsel were instructed to re-file the documents. (*See* Dkt. Nos. 39–47.) Accordingly, on April 17, 2018, Defendant refiled its initial summary judgment and reply papers, (*see* Dkt. Nos. 48–54), and on August 30, 2018, Plaintiff refiled her opposition papers, (*see* Dkt. Nos. 55–57). The Court refers to the filing date of the original documents, but cites to the document numbers of the correctly filed documents.

*Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 521 (S.D.N.Y. 2015).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and internal quotation marks omitted). Further, "[t]o survive a [summary judgment] motion . . . , [a nonmovant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; [s]he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (internal quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . ."). Indeed, "[w]hile summary judgment must be granted with caution in employment discrimination actions, . . . a plaintiff must prove more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Aspilaire v. Wyeth Pharm., Inc.*, 612 F. Supp. 2d 289, 302 (S.D.N.Y. 2009) (citations and internal quotation marks omitted); *see also Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 608 (2d Cir. 2006) ("[I]t is the law of this Circuit that summary judgment remains available for the dismissal of

discrimination claims in cases lacking genuine issues of material fact, and may be appropriate even in the fact-intensive context of discrimination cases." (citations and internal quotation marks omitted)).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (internal quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod*, 653 F.3d at 164 (internal quotation marks omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharm. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (internal quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). However, a district court should consider only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)).

B.  Analysis

Plaintiff claims that Defendant violated Title VII of the Civil Rights Act of 1964 by failing to promote her to customer care supervisor because of her race and national origin. (*See*

*generally* Compl.)  Defendant argues that Plaintiff failed to establish a prima facie case of race or national origin discrimination or pretext.  (Def.'s Mem. 15–20.)[12]

### 1.  Time-Barred Allegations

"An aggrieved employee wishing to bring a Title VII claim in district court must file an administrative complaint with the EEOC within 300 days of the alleged discriminatory act." *Petrosino v. Bell Atl.*, 385 F.3d 210, 219 (2d Cir. 2004); *see also* 42 U.S.C. § 2000e-5(e). Plaintiff filed her charge on April 20, 2016.  (Def.'s 56.1 ¶ 13.)  As noted, Plaintiff filed her EEOC complaint on April 30, 2016.  Thus, any claims for discrimination based on Defendant's failure to promote Plaintiff that accrued prior to June 25, 2015 are time-barred.

"[E]very failure to promote is a discrete act that potentially gives rise to a freestanding Title VII claim with its own filing deadline.  Discrete acts of this sort, which fall outside the limitations period, cannot be brought within it, even when undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period.  *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 157 (2d Cir. 2012).  Accordingly, the claims for failure to promote Plaintiff based on her April 17, 2013 and June 3, 2015 applications are untimely.[13]  Plaintiff does not dispute this point.  (*See* Pl.'s Mem. 2 (noting that the April 2013 and June 18, 2015 "applications pre-date the statute of limitations"); Pl.'s 56.1 ¶ 36 (stating a

---

[12] The Complaint included hostile work environment claims.  (Compl. ¶ 1.)  However, Plaintiff has abandoned those claims by failing to address or to respond to Defendant's arguments in the summary judgment motion in her opposition.  *See Simon v. City of New York*, No. 14-CV-8391, 2015 WL 4092389, at *2 (S.D.N.Y. July 6, 2015) (collecting cases holding that a plaintiff abandons claims when it fails to address a defendant's argument on a motion, regardless of its merit); *Gaston v. City of New York*, 851 F. Supp. 2d 780, 796 (S.D.N.Y. 2012) (same).  Thus, the Court only considers the failure to promote claims.

[13] The June 3, 2015 promotion application was denied on June 18, 2015, in other words, before June 25, 2015.  (Phillips Decl. ¶ 17.)

fact regarding the 2013 interview was "irrelevant since outside the statute of limitations").)

Thus, the Court only considers Plaintiff's August 28, 2015 and December 2, 2015 applications for promotion to customer care supervisor.

### 2.  Failure to Promote

To establish a claim of race or national origin discrimination under Title VII, a plaintiff must meet the burden of proving that the adverse employment decision was motivated, at least in part, by the "impermissible reason" of race or national origin.  *See Fields v. N.Y. State Office of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 120 (2d Cir. 1997).  This claim is analyzed under the familiar three-part burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).

> Under *McDonnell Douglas*, a plaintiff bears the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination; it is then the defendant's burden to proffer a legitimate non-discriminatory reason for its actions; the final and ultimate burden is on the plaintiff to establish that the defendant's reason is in fact pretext for unlawful discrimination.

*Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2014).  To establish a prima facie case of discrimination due to a failure to promote, Plaintiff must show that "(1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the [P]laintiff's qualifications."  *Opoku v. Brega*, No. 15-CV-2213, 2016 WL 5720807, at *11 (S.D.N.Y. Sept. 30, 2016) (alterations and internal quotation marks omitted).  The fourth factor may also be demonstrated by other

"circumstances which give rise to an inference of discrimination." *Morris v. Ales Grp. USA, Inc.*, No. 04-CV-8239, 2007 WL 1893729, at *9 (S.D.N.Y. June 29, 2007)

### a. Plaintiff's Prima Facie Case

Here, there is no dispute that Plaintiff is a member of a protected class under Title VII. It is also undisputed that Defendant did not promote Plaintiff to Customer Care Supervisor. Accordingly, the Court's inquiry focuses on whether Plaintiff has presented evidence to support the two remaining elements necessary to establish a prima facie case of discrimination.

### i. Qualification

Under the *McDonnell Douglas* framework, a "plaintiff must prove by a preponderance of the evidence that she applied for an available position for which she was qualified." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Where a plaintiff cannot show that she was eligible for the position sought, she fails to make a prima facie case under Title VII. *See Workneh v. Pall Corp.*, 897 F. Supp. 2d 121, 131 (E.D.N.Y. 2012) (dismissing the plaintiff's failure-to-promote claim "because he has not met his prima facie burden of establishing he was qualified for [the relevant] position" (italics omitted)); *Velez v. SES Operating Corp.*, No. 07-CV-10946, 2009 WL 3817461, at *8 (S.D.N.Y. Nov. 12, 2009) (explaining that "the plaintiff [must] establish basic eligibility for the position at issue" in order to make out a prima facie case of discrimination (internal quotation marks omitted) (citing *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 91 (2d Cir. 2001))).

"[B]eing 'qualified' refers to the criteria the employer has specified for the positions," *Workneh*, 897 F. Supp. 2d at 131 (some internal quotation marks omitted) (citing *Williams*, 368 F.3d at 127), which as relevant here required, among other things, coaching customer care representatives on "attendance, punctuality and overall performance," "good leadership," and

"excellent communication" skills. (Phillips Decl., Ex. 6, at 1–8; Def.'s 56.1 ¶ 24–25, 41.) The record evidence demonstrates that Frazier, Plaintiff's immediate supervisor, expressed concerns about Plaintiff's time management and productivity, as well as written communication skills and communication responsiveness. (Def.'s 56.1 ¶ 43; Pl.'s Dep. Ex. 7 ("Frazier Email") 127 (Dk. No. 50).) Frazier also expressed concerns about Plaintiff's receptiveness to feedback noting that "full ownership and accountability [were] not demonstrated in her actions," and concluded she was not the best fit for the role. (Def.'s 56.1 ¶ 43; Frazier Email 127.) These were the same concerns that Frazier repeatedly raised in Plaintiff's performance reviews. (Performance Reviews.) Additionally, Plaintiff's interviewers found her answers to questions regarding her leadership abilities to be lacking in detail, (Def.'s Reply 56.1 ¶ 40; Ploof Dep. 7, 15–17), and her answers to other interview questions to be "vague" or not "sasifactor[]y," (Digilio Decl. 29–30). Thus, the record contains evidence that Plaintiff was not qualified for the position. *See Muszak v. Sears, Roebuck & Co.*, 63 F. Supp. 2d 292, 297 (W.D.N.Y. 1999) (finding prima facie case not satisfied where "communication skills were a part of the job" and the plaintiff's "language skills were not sufficient").

Plaintiff argues in her opposition that she was qualified for the position because she: (i) previously worked as a supervisor in the repairs department at Verizon, (Pl.'s Mem. 2–3); (ii) received generally satisfactory performance evaluations as a Quality Assurance Specialist, (*id.* at 3); and (iii) learned the "Compass" software, which was used to evaluate agents' handling of customer calls and improving business metrics, (*id.*). Plaintiff does not cite a single page in the record to support these arguments. Thus, the Court's analysis of this claim could end here. *See Berry*, 137 F. Supp. 3d at 503 n.1 (disregarding all assertions in opposition papers that "do not contain citations to the record, or are not supported by the citations in the record"); *Gonzalez v.*

*K-Mart Corp.*, 585 F. Supp. 2d 501, 503 (S.D.N.Y. 2008) ("[J]udges are not like pigs, hunting for truffles buried in the record." (internal quotation marks omitted)). However, the Court will briefly address these arguments. First, Plaintiff does not demonstrate how any of these three alleged facts align with the "criteria [TWC] has specified for the positions," and make her qualified for the position. *Workneh*, 897 F. Supp. 2d at 131. While the job description did note "supervisory experience preferred," (Phillips Decl., Ex. 6), the mere fact that she was a supervisor for some unknown duration during an unknown time period prior to her employment at TWC in January 2009 does not directly bear on her ability to meet the criteria for the promotion at TWC in 2015. *See, e.g.*, *Chang v. Cargill, Inc.*, 168 F. Supp. 2d 1003, 1008 (D. Minn. 2001) (finding "successful employment" at "three previous employers," particularly "regarding different job titles and different responsibilities," fails to demonstrate prima facie case of qualification).[14] Similarly, Plaintiff fails to link her ability to use the Compass software with the required qualifications for a Customer Care Supervisor. And, Plaintiff's prior satisfactory evaluations in her job as a Quality Assurance Specialist does not demonstrate she was qualified to be a Customer Care Supervisor. *See Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 272 (4th Cir. 2005) (noting "the performance evaluation is a review of an employee's performance in her current position, while the process of selecting a person for a promotion involves a consideration of how that employee will perform in a different position" and "are not interchangeable").

Second, Plaintiff's prior evaluations actually serve as evidence that she was not, in fact, qualified for the promotion, as they demonstrate she struggled with productivity and her written

---

[14] Defendant asserts Plaintiff was fired from Verizon, but does not provide the Court the page of the transcript cited as evidence of this fact. (Def.'s Reply Mem. 4). The fact is thus unsupported by the record, and the Court does not consider it.

communication skills. (Performance Reviews.) For example, the 2015 Performance Review noted Plaintiff should "ensure she recognizes and avoids potential time snares that may impact her productivity goals" and "keep alert to potential opportunities to meet the daily audit productivity goal." (Pl.'s Dep. Ex. 12 ("2015 Performance Review") 164 (Dkt. No. 50).) And, the 2014 Performance Review noted that "[Plaintiff] continues to receive coaching and feedback to ensure her written communication content is error free as it aligns with the value of Initiative and the Q[uality] A[ssurance] Performance Management Criteria." (Pl.'s Dep. Ex. 11 ("2014 Performance Review") 157 (Dkt. No. 50).)

Plaintiff also argues that the suggestion that Plaintiff did not have good communication skills is belied by Digilio's testimony that she is able to understand Plaintiff and her accent was not a factor in whether she received the promotion. (Pl.'s Mem. 3.) Again, Plaintiff does not cite to record evidence to support this assertion, nor does she explain how Digilio's ability to understand Plaintiff when she spoke creates a dispute of fact regarding the sufficiency of her *written* communication skills or demonstrates she was qualified for the promotion. Even more problematic is the fact that this testimony undercuts Plaintiff's claim that her Spanish accent somehow contributed to her not getting promoted. (*See* Pl.'s Mem. 1 (asserting that Plaintiff "speaking in English with a heavy accent was a substantial factor in the Defendant's refusal to promote her").) Accordingly, Plaintiff has failed to point to any record evidence to demonstrate that she was qualified for the position. *See Siddiqi v. N.Y.C. Health & Hosps. Corp.*, 572 F. Supp. 2d 353, 369 (S.D.N.Y. 2008) (holding the "[p]laintiff fail[ed] to make a prima facie case that [the] [d]efendant's failure to promote [him] was discriminatory," where the plaintiff failed to that show he was qualified for the relevant position); *Williams v. R.H. Donnelley Inc.*, 199 F. Supp. 2d 172, 177 (S.D.N.Y. 2002) (finding that "summary judgment on behalf of [the]

defendant is appropriate" where the plaintiff "was not qualified for the promotion"), *aff'd*, 368 F.3d 123 (2d Cir. 2004).

ii.  Inference of Discrimination

However, even assuming there is a dispute of fact that Plaintiff was qualified for the promotion, Plaintiff fails to establish the fourth element of a prima facie case, as she presents no evidence of circumstances giving rise to an inference of discrimination.  "[T]here is no unbending or rigid rule about what circumstances allow an inference of discrimination when there is an adverse employment decision."  *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996).  A plaintiff can support such an inference by (a) "demonstrating that similarly situated employees of a different race or national origin were treated more favorably," (b) "showing that there were remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus," or (c) "proving that there were other circumstances giving rise to an inference of discrimination on the basis of [the] plaintiff's race or national origin."  *Gelin v. Geithner*, No. 06-CV-10176, 2009 WL 804144, at *15 (S.D.N.Y. Mar. 26, 2009) (citations and internal quotation marks omitted), *aff'd*, 376 F. App'x. 127 (2d Cir. 2010).  Conclusory and speculative allegations will not suffice to demonstrate discriminatory intent.  Rather, a plaintiff "must point to facts that suggest" that the adverse employment action was motivated, at least in part, by discriminatory animus.  *Kalsi v. N.Y.C. Transit Auth.*, 62 F. Supp. 2d 745, 753 (E.D.N.Y.1998), *aff'd*, 189 F.3d 461 (2d Cir. 1999); *see also Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (reaffirming that, in order to prove a case of discrimination, a plaintiff "may not rely simply on conclusory statements"); *Anderson v. Port Auth.*, No. 04-CV-4331, 2009 WL 102211, at *4 (S.D.N.Y. Jan. 12, 2009) ("[M]ere conclusory allegations of discrimination will not defeat a summary judgment motion; a plaintiff in a

discrimination case must proffer 'concrete particulars' to substantiate his claim."). "Although the burden of meeting the prima facie case is 'de minimis,' [a] [p]laintiff must adduce some admissible evidence that would support [her] claims." *Henny v. N.Y. State*, 842 F. Supp. 2d 530, 553 (S.D.N.Y. 2012) (alterations and internal quotation marks omitted). Although Plaintiff's brief contains no record citations or citation to cases on the question, the Court construes Plaintiff to be arguing that four factors suggest an inference of discrimination: (1) she was more qualified than the candidates chosen for the promotion, (Pl.'s Mem. 6); (2) Help Desk employees made negative comments about her use of Spanish in the office, (*id.* at 5); (3) she was passed over for a promotion more than once, (*id.* at 4); and (4) she was not re-interviewed for the August 28, 2015 or December 2, 2015 position, (*id.* at 5).[15]

Plaintiff maintains that she was more qualified for the Customer Care Specialist position. (*See* Pl.'s 56.1 Reply ¶¶ 54–55; Pl.'s Opp'n 4.)[16] Plaintiff may disagree with the determination that N.H. and the December 2015 hire were best suited for the respective positions, but as a matter of law "Plaintiff's subjective disagreement with Defendant[']s assessment of her qualifications does not make their decision discriminatory." *Shands v. Lakeland Cent. Sch. Dist.*, No. 15-CV-4260, 2018 WL 3315738, at *13 (S.D.N.Y. July 5, 2018) (collecting cases); *Crews v.*

---

[15] Plaintiff also notes that Digilio never contacted Plaintiff's prior employer, that Digilio claimed Plaintiff gave vague answers during her interview, and that Digilio did not follow up with Plaintiff a regarding a question she appears to have misunderstood during the interview. (Pl.'s Mem. 5.) It is unclear how these single-sentence recitations of facts are at all relevant to demonstrating an inference of discrimination based on Plaintiff's race or national origin, and the Court declines to make such an "illogical leap" on Plaintiff's behalf. *Alfieri v. SYSCO Food Servs.–Syracuse*, 192 F. Supp. 2d 14, 26 (W.D.N.Y. 2001) (noting that conduct that had "nothing to do with the plaintiff's protected status . . . , cannot rise to the level necessary to raise any inference of discrimination").

[16] In her Opposition, Plaintiff only argues she was more qualified than N.H., who was selected to fill the August 28, 2018 position. (Pl.'s Mem. 6.) She does not dispute the qualifications of the December 2015 applicant. (Pl.'s 56.1 ¶ 58.)

*Trs. of Columbia Univ. in City of N.Y.*, 452 F. Supp. 2d 504, 526 (S.D.N.Y. 2006) ("Although [the plaintiff] may disagree with [the defendant's] determination that [another candidate] was more qualified than he, courts are not permitted to second-guess the reasonableness of the employer's criteria for employment or the merits of its selection for the position."); *Hines v. Hillside Children's Ctr.*, 73 F. Supp. 2d 308, 320 (W.D.N.Y. 1999) (finding a plaintiff's "opinion about h[er] own qualifications does not suffice to give rise to an issue of fact about whether [s]he was discriminated against, and that is particularly true where the employer's decision whether to promote [the employee] did not depend simply on whether he was qualified, but on whether [s]he was the best candidate for the job." (alterations and internal quotation marks omitted).) Additionally, Plaintiff cites no admissible evidence about N.H. in the record such that a factfinder could compare her experience with Plaintiff's. Plaintiff's belief that she had more education and supervisory experience than N.H. based on conversations with other people, and possibly N.H. herself, is inadmissible hearsay and the Court will not consider it to create a dispute of material fact at summary judgment. *See* Fed. R. Evid. 801(c); *Schachner v. Beth Israel Med. Ctr., N. Div.*, 14 F. Supp. 2d 468, 472 (S.D.N.Y. 1998) (holding hearsay "cannot be used to withstand a summary judgment motion"). Further, Plaintiff provides no commentary, let alone evidence, regarding the December 2, 2015 applicant. *See Bucek v. Gallagher Bassett Servs., Inc.*, No. 16-CV-1344, 2018 WL 1609334, at *14 (S.D.N.Y. Mar. 29, 2018) (collecting cases holding that the plaintiff must provide evidence of proposed comparator's relevant characteristics, such as prior experience); *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 514 (S.D.N.Y. 2010) ("[V]ague claims of differential treatment alone do not suggest discrimination, unless those treated differently are similarly situated in all material respects." (internal quotation marks omitted)). Indeed, where a decision to promote one person rather than another "is reasonably attributable to an honest even though partially subjective evaluation of . . .

qualifications, no inference of discrimination can be drawn." *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 105 (2d Cir. 2001); *see also Nguyen v. Dep't of Corr. & Cmty. Servs.*, 169 F. Supp. 3d 375, 390–91 (S.D.N.Y. 2016) (same); *Sibilla v. Follett Corp.*, No. 10-CV-1457, 2012 WL 1077655, at *15 (E.D.N.Y. Mar. 30, 2012) (same).

The fact that certain Help Desk employees allegedly made comments about Plaintiff's use of Spanish at work also does not support an inference of discrimination by Ploof and Digilio in choosing not to promote Plaintiff. First, Plaintiff has not presented evidence that the discriminatory remarks were made by one of her supervisors, anyone involved in the promotion decisions, or that the comments bore any weight on the decision not to promote Plaintiff.[17] *See Gelin*, 2009 WL 804144, at *15 (no interference of discrimination where there was no evidence "negative comment about [the plaintiff's] knowledge of the English language" was made by "one of his supervisors, [anyone] involved in the decision to suspend Plaintiff, or that [the] comments bore any weight in [the] [p]laintiff's supervisors' recommendation to suspend him"); *see also Tomassi v. Insignia Fin. Group, Inc.*, 478 F.3d 111, 115 (2d Cir. 2007) ("[R]emarks made by someone other than the person who made the decision adversely affecting the plaintiff may have little tendency to show that the decision-maker was motivated by the discriminatory sentiment expressed in the remark."); *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 162 (2d Cir. 1998) (concluding that "'stray' remarks in the workplace by persons who are not involved in the pertinent decisionmaking process" do not suffice to establish inference of discriminatory animus); *Quinby v. WestLB AG*, No. 04-CV-7406, 2007 WL 3047111, at *1 (S.D.N.Y. Oct.18, 2007) ("Generally speaking, comments by nondecisionmakers cannot be used to establish

---

[17] This claim is not supported by admissible evidence—it is hearsay that Plaintiff was told.

discriminatory animus.").  It is undisputed that the negative comments were not made by anyone who had a role in deciding whether to promote Plaintiff, and thus the comments cannot be used to support an inference of discrimination.

Third, the fact that Plaintiff was denied a promotion four times does not support an inference of discrimination, especially in the absence of any evidence that the decision was tainted by discriminatory comments by the decision-makers or that those promoted instead of Plaintiff were so unqualified that only a discriminatory motive could explain their promotion. *See Johnson v. Connecticut Dep't of Corr.*, 392 F. Supp. 2d 326, 339 (D. Conn. 2005) ("That [the plaintiff] has been unable to secure a promotion despite his long tenure . . . is not itself evidence of discrimination, and that many instances of non-promotion occurred do not give rise to an inference of discrimination.").  Fourth, Plaintiff cannot demonstrate pretext from the fact that Plaintiff was not interviewed again following her August 25, 2015 and December 2, 2105 application, as it is undisputed that an interview was not necessary because Plaintiff had interviewed recently for the same position.  (Phillips Decl. ¶¶ 18, 19.)[18]

In the end, "Plaintiff has provided no concrete evidence of circumstances giving rise to an inference of discrimination."  *Nguyen*, 169 F. Supp. 3d at 392.  Her failure-to-promote claim ultimately rests on "nothing more than h[er] own subjective belief that [s]he was discriminated against, which is not enough to make out a prima facie discrimination case under Title VII." *Gibbs v. Metro. Transp. Auth.*, No. 13-CV-1583, 2014 WL 5842833, at *5 (E.D.N.Y. Nov. 12, 2014); *Gellin*, 2009 WL 804144, at *16 (noting that "[t]the Second Circuit has rejected precisely

---

[18] Plaintiff also raises claims regarding the shadow program, however those allegations are unclear and not well developed, and it is undisputed that Plaintiff believed she was not allowed to participate in the program based on her gender, and not because of her race or national origin.  (Def.'s 56.1 ¶ 65.)

the type of speculation . . . where [the plaintiff] has "done little more than cite to [his] mistreatment and ask the [C]ourt to conclude that it must have been related to [her] race."); *White v. Fuji Photo Film USA, Inc.*, 434 F. Supp. 2d 144, 151 (S.D.N.Y. 2006) ("Courts within the Second Circuit have not hesitated to grant defendants summary judgment in such case[s] where [a] plaintiff has offered little or no evidence of discrimination." (internal quotation marks omitted)). In the absence of any evidence supporting an inference of discrimination, there is simply no basis in the record for a reasonable factfinder to conclude that Plaintiff was not promoted because of any discriminatory animus.

### b. Defendant's Non-Discriminatory Reasons

Even assuming Plaintiff has satisfied a prima facie case of race or national origin discrimination because she was a qualified candidate who lost the job to a non-Hispanic, non-Puerto Rican candidate, *see Opoku*, 2016 WL 5720807, at *11 (setting forth elements of prima facie case), Plaintiff fails to raise a dispute of material fact as to whether Defendant's non-discriminatory reasons for not choosing Plaintiff were a pretext for race or national origin discrimination. At this second stage of the *McDonnell Douglas* framework, an employer's burden is to "clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (italics and internal quotation marks omitted); *see also McCaskill v. ShopRite Supermarket*, No. 13-CV-238, 2015 WL 419658, at *8 (N.D.N.Y. Jan. 30, 2015) (same). This "burden of showing a legitimate[,] non-discriminatory reason for its actions is not a particularly steep hurdle." *Brierly v. Deer Park Union Free Sch. Dist.*, 359 F. Supp. 2d 275, 291 (E.D.N.Y. 2005).

Defendant proffered legitimate, non-discriminatory reasons for choosing N.H. for the August 28, 2015 position: N.H. had completed the Supervisor Intern Program and Defendant believed she was more qualified because she was "able to connect with agents in her communication, very passionate about customer service, [and] very passionate about professionalism." (Def.'s 56.1 ¶ 54 (quoting Digilio Dep. 49.) Additionally, on December 2, 2015, Defendant again selected a candidate who had completed the Supervisor Intern Program. (Def.'s 56.1 ¶ 58.) Ploof observed that Plaintiff did not have answers to the "leadership questions" at her June 2015 interview, and, in particular, that she did not have "details on who she coached and developed before in lead teams." (Def.'s Reply 56.1 ¶ 40; Ploof Dep. 7, 15–17). Digilio also believed that Plaintiff was "vague on her answers to [Digilio's] questions or did not answer them satisfactorily." (Digilio Dep. 29–30.) And, Frazier's feedback regarding Plaintiff's readiness for the position was not favorable. (Def.'s 56.1 ¶ 43.) This is sufficient evidence to satisfy Defendant's burden at step two of *McDonnell Douglas*. *See Mandell v. Cty. of Suffolk*, 316 F.3d 368, 380 (2d Cir. 2003) (finding that the employer proffered sufficient evidence of legitimate reasons not to promote the plaintiff through supervisor's testimony that he found the other candidate more qualified and got a negative impression of the plaintiff in an interview); *Nguyen*, 169 F. Supp. 3d at 393 (finding non-discriminatory reasons for not promoting the plaintiff, such as "performance during the job interviews, qualifications, and experience," sustained the burden); *Aspilaire v. Wyeth Pharm., Inc.*, 612 F. Supp. 2d 289, 306–07 (S.D.N.Y. 2009) (finding employer's belief that another candidate "was the most qualified applicant for the job based on [their] experience" and concerns about the plaintiff's work were sufficient legitimate, non-discriminatory reasons for not promoting the plaintiff); *Jimenez v. City of N.Y.*, 605 F. Supp. 2d 485, 524–25 (S.D.N.Y. 2009) (noting that "employers enjoy unfettered

discretion to choose among qualified candidates and to decide which types of credentials are of the most importance for a particular job" (internal quotation marks omitted)); *see also Schupbach v. Shinseki*, 905 F. Supp. 2d 422, 436 (E.D.N.Y. 2012) (concluding an employer "proffered a legitimate, non-discriminatory reason for not selecting [the] plaintiff—namely, that that there were other candidates that were more qualified than [the] plaintiff"); *Milano v. Astrue*, No. 05-CV-6527, 2008 WL 4410131, at *30–31 (S.D.N.Y. Sept. 26, 2008) (finding that an employer overcame a prima facie case by coming forward with evidence that certain chosen applicants had prior experience and that the employer was concerned with the plaintiff's ability to handle certain aspects of position), *aff'd* 382 F. App'x. 4 (2d Cir. 2010). Although Plaintiff may disagree with the decision that the August and December 2015 hires were better suited for the Customer Care Supervisor positions, the "Court is not permitted to second-guess the wisdom of [Defendant's] selection." *Lanier v. I.B.M. Corp.*, 319 F. Supp. 2d 374, 387 (S.D.N.Y.2004) (internal quotation marks omitted); *see also James v. Newsweek*, No. 96-CV-0390, 1999 WL 796173, at *11 (S.D.N.Y. Sept. 30, 1999) ("Plaintiff's objections to the decisions made by [Defendant] amount to a difference of opinion as to her qualifications, and these are business decisions which [the Court] is instructed not to second-guess.").

### c. Pretext

Because Defendant has shown legitimate, non-discriminatory reasons for its hiring decisions, the burden returns to Plaintiff to come forward with evidence that the reasons cited are "mere pretext for actual discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000). To meet this burden, which is "higher than that . . . applied for analyzing the prima facie case," *Geoghan v. Long Is. R.R.*, No. 06-CV-1435, 2009 WL 982451, at *21 (E.D.N.Y. Apr. 9, 2009) (italics omitted), a "plaintiff must produce not simply 'some' evidence, but sufficient

evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action," *Weinstock*, 224 F.3d at 42 (alterations and some internal quotation marks omitted). That evidence may be either direct or circumstantial, *Jimenez*, 605 F. Supp. 2d at 522 (citing *Burdine*, 450 U.S. at 256)), but must, "taken as a whole, support[ ] a sufficient rational inference of discrimination," *Weinstock*, 224 F.3d at 42. "[I]t is not enough . . . to disbelieve the employer; the factfinder must [also] believe the plaintiff's explanation of intentional discrimination." *St. Mary's Honor Ctr.*, 509 U.S. at 519 (emphasis omitted). That the Court cannot do.

Plaintiff offers insufficient evidence, if any at all, to contest the qualifications of either candidate hired for the August 28, 2018 or December 2, 2015 position. To repeat, Plaintiff's subjective belief that she was more qualified for the position, without any evidence showing she was clearly more qualified, is insufficient to show that race or national origin played a motivating role in the decision not to promote Plaintiff. *See Byrnie*, 243 F.3d at 103 (explaining that, to defeat summary judgment, "the plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that no reasonable person . . . could have chosen the candidate selected over the plaintiff for the job in question" (internal quotation marks omitted)); *Holt*, 95 F.3d at 130 (reaffirming that a plaintiff cannot show pretext simply "by asserting her personal belief that she was the most qualified person for the various positions"); *Nguyen* 169 F. Supp. 3d at 394 (finding the plaintiff's subjective belief "that he had greater experience, or 'more seniority,'" was insufficient to establish pretext); *Jones v. N.Y.C. Bd. of Educ.*, No. 09-CV-4815, 2012 WL 1116906, at *12 (S.D.N.Y. Apr. 2, 2012) ("The [p]laintiff's subjective belief that she was more qualified . . . is insufficient to establish pretext."); *Subramanian v. Prudential Sec.,*

*Inc.*, No. 01-CV-6500, 2003 WL 23340865, at *9 (E.D.N.Y. Nov. 20, 2003) ("[The plaintiff's] subjective belief that he was more qualified is insufficient to create a genuine issue of material fact as to whether he was the target of discrimination.").

In sum, Digilio and Ploof made a business judgment that M.H. and the December 2015 hire were better candidates than Plaintiff, and, absent evidence that that decision was motivated even in part because of Plaintiff's race or national origin, the Court should not substitute its own judgment for Defendant's. *See Byrnie*, 243 F.3d at 103 (noting that where the other candidate was not unqualified and the employer was not unreasonable in selecting that candidate "in light of a comparison of her paper credentials with [the plaintiff's]," the plaintiff failed to show pretext); *Newsome v. IDB Capital Corp.*, No. 13-CV-6576, 2016 WL 1254393, at *22 (S.D.N.Y. Mar. 28, 2016) ("At their heart, [the] [p]laintiffs' claims reflect their disagreement with the [d]efendants' business judgments and assessments of the quality of their work or reflect the [p]laintiffs' subjective feelings and perceptions that they were being discriminated against because of their . . . gender. Such claims are, however, insufficient to establish discrimination."); *Sattar v. Johnson*, No. 12-CV-7828, 2015 WL 5439064, at *12 (S.D.N.Y. Sept. 11, 2015) ("To fault the [employer] for selecting [another candidate] over [the plaintiff] would improperly require the factfinder to act as a 'super personnel department,' second-guessing the merits of the [employer's] decision to select [the other candidate] for the position over [the plaintiff]" (internal quotation marks omitted)). Plaintiff's unsubstantiated self-assessment does not create a genuine issue of material fact on the issue of pretext.[19]

_____

[19] Plaintiff's argument that Frazier's June 2015 email explaining that Plaintiff had time management issues was "pretextual" because Plaintiff "spends a portion of her time at work providing assistance to other quality assurance advocates to help them complete their assignments and keep up with their caseloads," (Compl. ¶ 28), misses the mark. While Plaintiff

Because the other facts argued in Plaintiff's opposition failed to even suggest an inference of discrimination, let alone provide evidence of it, the Court will not further explain why the evidence does not satisfy the even more demanding requirement needed to demonstrate pretext. *See Eka v. Brookdale Hosp. Med. Ctr.*, 247 F. Supp. 3d 250, 272 (E.D.N.Y. 2017) (noting the "more demanding burden of proving a triable issue of fact as to . . . pretext"). Therefore, because Plaintiff has not raised a dispute of material fact regarding whether the decision not to hire her as a Customer Care Supervisor was motivated in part by her race or national origin, the Court grants Defendant's Motion for Summary Judgment.

## III. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted. The Clerk of the Court is respectfully directed to terminate the pending Motion, (Dkt. No. 47), enter judgment for Defendant, and close this case.

SO ORDERED.

DATED:     October **15**, 2018
            White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

_____

uses the term "pretext," Plaintiff fails to explain how this fact evinces a racial or national origin based reason for failing to promote Plaintiff.